## BORCHARD v. EASTWOOD.

### L. A. No. 869; July 24, 1901.

#### 65 Pac. 1047.

**Deeds—Description.**—Where, in a Deed, Land is Described as commencing at the corner of certain sections "in the Chapman tract in the Rancho Santiago de Santa Ana in the county of Orange," the description is sufficient, though the township and range are not stated.

**Deed—Description—Mistake.**—Where, in a Deed, the Land is fully and correctly described, except the number of the township is given as "45" instead of "4," and the land can be identified by the rest of the description, such mistake will not vitiate the conveyance.[1]

**Deed—Description.**—Where the Description in a Deed is all "the lands owned by the grantor" in a certain county, with certain exceptions, it is sufficient to convey all his lands in such county not included within the exceptions.

**Boundary.**—Statements of a Former Owner of Land, and his acts in putting in stakes on an alleged boundary line, are unavailing to establish the boundary, where the adjoining owner was not present, nor had any knowledge of such acts.

APPEAL from Superior Court, Orange County; J. W. Ballard, Judge.

Action by Carl A. Borchard against John Eastwood. From a judgment for plaintiff and from an order denying a new trial defendant appeals. Affirmed.

McKelvey & Bowers for appellant; Williams & Jackson for respondent.

COOPER, C.—Action to quiet title. Plaintiff recovered judgment and defendant appeals therefrom and from an order denying his motion for a new trial.

The premises are described in the complaint as "lying and being in the Rancho Santiago de Santa Ana, county of Orange, state of California, bounded and particularly described as follows, to wit: Beginning at a point 15.825

---

1 Cited with approval in Crozer v. White, 9 Cal. App. 616, 100 Pac. 132, the court saying that parol evidence is admissible to explain ambiguity in a writing, although not to add to, contradict or vary the instrument.

chains east from the corner of sections 28, 29, 32, and 33, township 4 S., R. 9 W., S. B. M.; thence north 16.93 chains; thence east 5.905 chains; thence south 16.93 chains; thence west 5.905 chains, to point of beginning—containing ten acres. The same being a portion of lots 13 and 14, block F, of the A. B. Chapman tract, as per map made by Frank Lecouvereur in December, 1870.'' At the close of plaintiff's evidence the defendant made a motion for a nonsuit, which was denied, and it is claimed that the court erred in denying the motion. The argument is that the description contained in certain deeds offered in evidence by the plaintiff, marked Exhibits A, B, C, D and E, does not identify the land described in the complaint. The land is described in Exhibit A as ''commencing at a stake 9.92 chains east from the corner of sections 28, 29, 32, and 33, which is the southwest corner of the east one-half of lot No. 13, block F, on the Chapman tract of the Rancho Santiago de Santa Ana, and running thence north 16.93 chains to a redwood post; thence east 16.81 chains to a redwood post; thence south 16.93 chains to iron pin 18 inches long; thence west 11.81 chains to the southwest corner, the place of beginning.'' The same description is contained in Exhibits C and D. It is admitted that the description in the three deeds is the same, if the lands are in the same township and range as the land described in the complaint; but it is said that, as the deeds mention no township or range, they do not describe the same land. The description in the deeds was sufficient to identify the land without mentioning the township and range. We will not presume that there is another similar description of a tract of land in a different township and range commencing at the common corner to sections 28, 29, 32 and 33 in the Chapman tract in the Rancho Santiago de Santa Ana in the county of Orange. The description was sufficient to identify and locate the land. It has been held that, even if the deed describes the land as being in the southeast quarter, instead of the southwest quarter, of a named quarter section, the description is good if the land can be identified by monuments actually fixed upon the grounds: Helm v. Wilson, 76 Cal. 476, 8 Pac. 604. So it was held that, where a deed did not name the state, county or city in which the land was situated, the description was not void, because without it the property could still be located

and identified: McCullough v. Olds, 108 Cal. 532, 41 Pac. 420. The land was identified by Findley, a surveyor. He said he knew the stake at the common corner to sections 28, 29, 32 and 33, and that the land in question is a part of the Chapman tract. The description in Exhibit E describes the land as "beginning at a point 15.825 chains east from the corner of sections 28, 29, 32, and 33, township 45, range 9 west, S. B. M." Then follows a correct description of the ten acres as in the complaint. It is said that this deed is void because the township is described as "45" instead of "4." This was evidently a mistake. The description identifies the land without the number of the township. It describes the land as being a "portion of lots 13 and 14, block F, of the A. B. Chapman tract, as made by Frank Lecouvereur in December, 1870." The number of the township in this deed may, therefore, be regarded as surplusage. Exhibit B conveyed all the land owned by the grantor in Los Angeles county on the fourteenth day of March, 1881, with certain exceptions. It is not claimed that the land described in the complaint here comes within the exceptions, and the description was therefore sufficient: Pettigrew v. Dobbelar, 63 Cal. 396. It was not error to admit the said deeds in evidence, and the nonsuit was properly denied.

The answer, among other defenses, alleges that the defendant, Eastwood, and his predecessors in interest, have been in possession of the lands described in the complaint for more than five years before the commencement of this action, and that the division line between the lands of plaintiff and defendant has been established by consent of the parties for more than five years before the commencement of the action. The court found against defendant upon this allegation, and found the allegation "to be untrue, and without any foundation or basis whatever except as to the boundary line on the east side of the strip of land described in the plaintiff's complaint." The finding is challenged as being contrary to the evidence. We have examined the evidence, and find that it not only supports the finding, but that no other proper finding could have been made therefrom. When either party comes into court, claiming to be the owner of land, the paper title of which is in his adversary, and claims to be such owner by a parol agreement, or by conduct which estops the other party from claiming the

true line, the burden is upon him to prove clearly such agreement or acquiescence as will comply with the rules of law as herein stated. The evidence shows that one Edward F. Wright owned the land in dispute from 1882 up to December, 1898, the date of the conveyance to plaintiff. His brother, Charles L. Wright, owned the land on the east until about 1892 or 1893, when he sold to one Bancroft. After the sale to Bancroft, he leased the property for several years, and occupied it and farmed it as a tenant of Bancroft. During these years the brothers farmed the two places together, cultivating them and plowing from east to west across the division line. There is no evidence that any boundary line was agreed upon while Charles L. Wright was the owner on the east. There is no evidence that after Bancroft became the owner there was any agreement as to the boundary line, or any claim by Bancroft that he owned any more than the land called for in his deed. In the fall of 1896 the defendant purchased the land on the east from Bancroft, taking only the property described in Bancroft's deed, which did not include the land in dispute. Defendant testified that after he bought from Bancroft about the 1st of January, 1897, Charles L. Wright put in stakes "where he [Wright] said the line was between the two places; that they had always called that the line." At this time Charles L. Wright was not the owner of the land on either side of the disputed line, and hence his statement and acts in putting in stakes can bind no one, as neither plaintiff nor his grantor was present, nor had either of them any knowledge of it. Defendant testified: "When I bought the place, I was given to understand that the line was where it was staked out by Charley Wright." He does not say who gave him such understanding, except what was said by Charley Wright. Certainly it cannot be said what Bancroft, or anyone else, stated to him, in the presence of plaintiff or his grantor, as to the location of the boundary line. Charles L. Wright testified that when he set the stakes he never told defendant that the line he marked off was an acquiesced line or an agreed line, but that he distinctly told defendant that there would have to be a survey made before the true line could be determined. Plaintiff's grantor testified that he never was present when any line was staked out, and never at any time agreed or acquiesced in the line claimed by de-

fendant. Defendant at the time, or about the time, Edward F. Wright was going to sell to plaintiff, said to Charles L. and Edward F. Wright that he would be satisfied with the county surveyor's survey, and would abide by it. He did not then claim any boundary line, or at least he did not say anything about it in his conversation. When plaintiff was about to buy, he asked defendant about the boundary line, and defendant replied that he did not know where it was; and, when plaintiff told him that he would not buy without a survey, defendant replied: "Very well, have a survey made, and I will stand by it; and if it comes my way it will be all right, and if it should go yours, why, I will get more land." In the conversations with plaintiff defendant never mentioned such a thing as an agreed boundary line. Defendant, in his answer, claimed title by adverse possession, but, as the evidence fails to support the claim, it seems to be abandoned, as it is not argued in the appellant's brief. We advise that the judgment and order be affirmed.

We concur: Smith, C.; Haynes, C.

PER CURIAM.—For the reasons given in the foregoing opinion the judgment and order are affirmed.